# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>**TROVERCO, INC.,**<br><br>**Debtor.** | Chapter 11<br><br>Case No. 17-44474<br><br>**Hearing Date and Time:**<br>July 5, 2017, 10:30 a.m.<br><br>**Hearing Location:**<br>Courtroom 7 South, Thomas F. Eagleton U.S. Courthouse<br><br>**Response Due:**<br>July 5, 2017 |

### DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING, BUT NOT DIRECTING, THE DEBTOR TO PAY CERTAIN PREPETITION WAGES, COMPENSATION, AND EMPLOYEE BENEFITS AND CONTINUE PAYMENT OF WAGES, COMPENSATION AND EMPLOYEE BENEFITS IN THE ORDINARY COURSE OF BUSINESS AND (II) AUTHORIZING APPLICABLE BANKS AND OTHER FINANCIAL INSTITUTIONS TO PROCESS AND PAY ALL CHECKS PRESENTED FOR PAYMENT AND TO HONOR ALL FUNDS TRANSFER REQUESTS MADE BY THE DEBTOR RELATED THERETO

Troverco, Inc., the above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its proposed counsel, submits this motion (the "Motion"), pursuant to sections 105(a), 363 and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order (i) authorizing, but not directing, the Debtor, in the ordinary course of business, to (a) pay prepetition employee wages, salaries, and certain other payments owed to employees, as further detailed herein, (b) make contributions to prepetition benefit programs and continue such programs, (c) make all payments for which prepetition payroll withholding deductions (including, but not limited to, payroll taxes) were made, and (d) reimburse all prepetition employee business expenses; (ii) authorizing, but not directing, the Debtor to continue payment

of wages, compensation, and employee benefit programs as described more fully below; and (iii) authorizing and directing applicable banks and other financial institutions to honor and pay all checks and transfers drawn on the Debtor's bank accounts to make the foregoing payments. In support of the motion, the Debtor respectfully states as follows:

## INTRODUCTION

1. On June 29, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.

2. The Debtor continues in the operation and management of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. No trustee, examiner or official committee has been appointed in this chapter 11 case.

4. Simultaneously with the filing of this Motion, the Debtor filed the *Declaration of Joseph E. Trover, Jr. in Support of the Debtor's Chapter 11 Petition and First Day Motions* (the "First Day Declaration"). A more detailed factual background of the Debtor's business and operations, as well as the events leading to the filing of this chapter 11 case, is more fully set forth in the First Day Declaration and incorporated herein by reference.

## JURISDICTION AND VENUE

5. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6. The statutory predicates for the relief sought herein are sections 105(a), 363, and 507(a) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

**BACKGROUND**

7.      As of the Petition Date, the Debtor employed 151 non-union employees (the "Employees"). The Employees have the requisite knowledge and experience regarding the Debtor's products, vendors, operations and distribution routes to preserve the value of the Debtor's business. In order to maximize the value of the Debtor's estate, the Debtor must retain its Employees so that it may continue its operations while reorganizing.

8.      As set forth herein, the Debtor seeks authority to pay and honor its prepetition obligations to its Employees in the ordinary course of business, including by satisfying wage and other compensation-related obligations, paying employee withholding taxes and employer taxes, honoring holiday pay and other paid time off obligations, maintaining employee benefits and honoring all employee benefits obligations that the Debtor has traditionally provided in the ordinary course of business, continuing garnishment and payroll deductions, reimbursing Employees for business expenses and maintaining corporate card programs (such obligations are collectively referred to herein as the "Employee Obligations"). The Debtor also seeks authority to continue certain of the programs, plans and policies related thereto (the "Employee Programs") post-petition.

**A.      Compensation and Compensation-Related Obligations**

   *i.      Wages, Salaries and Other Compensation*

9.      Employees are paid bi-weekly on Wednesdays for services performed during the previous two (2) work weeks, unless holidays or other closings interfere with the normal payday. The Debtor's payroll process is administered by ADP. As of the Petition Date, the Debtor's average bi-weekly payroll for the Employees, which includes certain employer-funded taxes, is

approximately $340,000, which amount will be reduced due to recent and impending terminations.

10. The Debtor's next payroll disbursement is scheduled to occur on July 12, 2017.

11. In addition to gross payroll paid to the Employees, the Debtor also pays certain employer-funded payroll taxes and obligations. These amounts include federal Medicare and Social Security taxes and federal and state unemployment taxes.

12. By this Motion, the Debtor seeks authority to pay in the ordinary course of business any unpaid compensation earned within the one hundred eighty (180) days prior to the Petition Date by its Employees and owed to such Employees as of the Petition Date, including any associated costs and fees, and to continue to pay its Employees post-petition earnings in the ordinary course of business.

13. The estimated accrued and unpaid prepetition wages of the Debtor's employees earned within the one hundred eighty (180) days prior to the Petition Date is approximately $150,000. No payments on account of prepetition wages earned within the one hundred eighty (180) days prior to the Petition Date would exceed $12,850 per individual Employee.

    *ii.* ***Bonus Obligations***

14. The Debtor maintains a performance based bonus program (the "Bonus Program") that is dependent on sales.

15. The Debtor seeks authority, in its sole discretion, to continue the Bonus Program in the ordinary course of business and continue to honor obligations thereunder, and to pay all such amounts owed under the Bonus Program, to the extent that any amounts owed relate to prepetition periods.

### iii. *Paid Time Off, Holiday Pay, Bereavement Leave and Jury Duty*

16. The Debtor provides its full-time Employees with paid time off benefits, that allow such Employees paid time off from work for reasons such as vacation and personal reasons, including illness, medical appointments, holidays not observed by the Debtor, birthdays or other personal or family business.

17. The Debtor also offers is Employees six (6) paid holidays throughout the year and paid bereavement leave of three (3) work days per year for the death of an immediate family member and one (1) work day per year for the death of an extended family member. Employees who participate in jury duty are entitled to receive regular pay for a maximum of five (5) days.

18. By this Motion, the Debtor seeks authority, in its sole discretion, to continue to honor its paid vacation, holiday, bereavement and jury duty policies in the ordinary course of business during this chapter 11 case.

### B. Employee Health and Welfare Benefits

### i. *Health Care Programs*

19. The Debtor offers its regular, full-time Employees group health, dental and vision insurance programs (the "Health Care Programs"), which are funded in part through employee contributions.

20. By this Motion, the Debtor seeks authority, in its sole discretion, (a) to continue to provide the Health Care Programs for its Employees in the ordinary course of business, (b) to continue to honor obligations under such benefit programs, including, for the avoidance of doubt, (i) any incurred but not reported claims under the Health Care Programs, and (ii) any administrative fees owed and payment and reimbursement of claims, and (c) to pay all such

amounts owed under the Health Care Programs to the extent that any may be owed related to prepetition periods.

### ii. *Life Insurance, Long and Short-Term Disability and Other Benefits*

21. The Debtor offers its Employees life insurance at no cost to the Employees. Employees are also able to elect additional life insurance, as well as long-term and short-term disability insurance, each of which are paid by the Employees, with no contributions from the Debtor.

22. Employees who elect to participate in any of these insurance programs pay the premiums for such elective insurance programs through payroll deductions. The Debtor then remits the premium payments to the appropriate insurers.

23. By this Motion, the Debtor seeks authority, in its sole discretion, to maintain the life insurance and long-term and short-term disability insurance, in the ordinary course of its business, and to continue to pay the premiums for such programs on behalf of the Employees, regardless of when the related costs accrued.

**C.    401(k) Savings Plan**

24. The Debtor maintains a retirement savings plan through Fidelity that meets the requirements of Section 401(k) of the Internal Revenue Code (the "401(k) Plan"). Employees who elect to participate in any of the 401(k) Plan make contributions to the plan through payroll deductions. As of the Petition Date, the Debtor does not offer its Employees any "match" for 401(k) contributions.

25. By this Motion, the Debtor seeks authority to continue the 401(k) Plan in the ordinary course of business and honor any obligations thereunder, such as any administrative fees, including amounts related to prepetition periods.

WA 9874374.1

**D.     Employee Payroll Garnishments/Other Payroll Deductions**

26.     The Debtor is required to deduct from Employee paychecks certain taxes, such as payroll and social security taxes, required to be withheld by certain federal, state and local taxing authorities. The Debtor also may be presented with garnishment or child support orders requiring the withholding of Employee wages to satisfy such obligations of those Employees. The Debtor seeks authority to continue such payroll deductions and to cause such amounts to be paid to third parties as requested or required by law.

27.     Additionally, certain Employees have voluntary deductions for contribution to a Christmas Club program. Through the Christmas Club program, Employees may elect to deposit a set amount of money each pay period into an account maintained by the Debtor. The Employees receive the total amount that they contributed to the Christmas Club program for any given year in November of that year, or upon their departure from the Debtor's employ. The Debtor seeks authority to continue the Christmas Club and to cause all amounts currently held on account of the Christmas Club program to be paid to the Employees when due.

**E.     Reimbursable Business Expenses**

28.     The Debtor customarily reimburses Employees who incur business expenses in the ordinary course of performing their duties on behalf of the Debtor. These reimbursement obligations include travel, lodging, ground transportation, meals, client entertainment expenses and other miscellaneous business expenses.

29.     It would be inequitable to require Employees to bear personally any approved business-related expenses they incurred in furtherance of their responsibilities to the Debtor. Accordingly, the Debtor requests authority, in its sole discretion and in the exercise of its

business judgment, to continue to honor all of its Employee Expense Obligations in the ordinary course of business, regardless of when such obligations arose.

**F.     Corporate Credit Card Programs**

30.    The Debtor's trucks are outfitted with corporate credit cards issued by Wright Express (the "WEX Corporate Credit Card Program") which allows the Debtor's drivers to make fuel purchases from unattended automated fueling facilities, onsite fueling facilities, and privately owned fueling site location(s).  As of the Petition Date, the current amount outstanding on account of the WEX Corporate Credit Card Program was approximately $30,000.

31.    It is essential for the Debtor to maintain the WEX Corporate Credit Card Program on an ongoing and uninterrupted basis so that Employees can continue to make business-critical purchases on short notice.  Accordingly, by this Motion, Debtor seeks authority, but not direction, to maintain the WEX Corporate Credit Card Program in the ordinary course of business and to pay any prepetition obligations thereunder.

**G.     Third-Party Benefits Administrators**

32.    UMR serves as a third-party administrator in connection with the Debtor's medical and prescription programs and stop-loss insurance.  UMR pays certain claims using a designated medical claims account maintained by the Debtor.  By this Motion, the Debtor seeks authority for UMR to continue to process claims in the ordinary course of business, whether such claims were made before or after the Petition Date.

**RELIEF REQUESTED**

33.    By this Motion, the Debtor requests entry of an order (i) authorizing, but not directing, the Debtor, in the ordinary course of business, to (a) pay and honor its Employee Obligations as described in the Motion and all costs incident thereto in the ordinary course of

business, (b) make contributions to prepetition Employee Programs and continue such Employee Programs post-petition as described in this Motion, (c) make all payments for which prepetition payroll deductions were made, and (d) reimburse all prepetition Employee Expense Obligations; and (ii) authorizing and directing the applicable banks and financial institutions to honor and pay all checks and transfers drawn on the Debtor's bank accounts to make the forgoing payments, regardless of whether such payment was issued prior to or following the Petition Date.

## BASIS FOR RELIEF

34. The Debtor's success in this chapter 11 bankruptcy is dependent on its Employees, without whom a successful reorganization for the benefit of creditors will not be possible. Absent the relief requested herein, the Debtor's business will be immediately and irreparably harmed, and the Employees will suffer enormous personal hardship.

A. **The Requested Relief Is Essential to the Debtor's Continued Operations.**

35. Courts in this District have routinely authorized debtors to pay prepetition wage and employee claims pursuant to sections 105(a) and 363 of the Bankruptcy Code when such payment was necessary to ensure the debtor's continued, uninterrupted operation. *See, e.g., In re Arch Coal, Inc.*, No. 16-40120 (CER) (Bankr. E.D. Mo. Jan. 13, 2016) (authorizing payment of prepetition wages, health benefits, severance, and reimbursable employee business expenses, among other things); *In re Bakers Footwear Grp.*, Inc., No. 12-49658 (CER) (Bankr. E.D. Mo. Oct. 10, 2012) (same); *In re US Fidelis*, No. 10-41902 (CER) (Bankr. E.D. Mo. Mar. 9, 2010) (same); *In re ContinentalAFA Dispensing Co.*, No. 08-45921 (KAS) (Bankr. E.D. Mo. Aug. 8, 2008) (same); *In re Dry Ice, Inc.*, No. 05-49452 (BSS) (Bankr. E.D. Mo. Jul. 11, 2005) (same); *In re Union Fin. Servs. Grp., Inc.*, No. 03-45870 (BSS) (Bankr. E.D. Mo. May 15, 2003) (authorizing payment of wages, salaries, commissions, bonuses, related taxes, reimbursement of

business expenses and obligations relating to employee benefit plans, among other things); *In re Bridge Info. Sys., Inc.*, No. 01-41593 (BSS) (Bankr. E.D. Mo. Feb. 16, 2001) (same); *In re Laclede Steel Co.*, No. 98-53121 (BSS) (Bankr. E.D. Mo. Dec. 3, 1998) (same).

36. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b). Section 105(a) of the Bankruptcy Code further empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

37. A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). Bankruptcy courts often invoke their equitable powers to authorize a debtor to pay certain critical prepetition claims under section 105(a) if "authorizing the payment of the prepetition debt creates 'the greatest likelihood of . . . payment of creditors in full or at least proportionately.'" *In re Structurelite Plastics Corp.*, 86 B.R. 922, 932 (Bankr. S.D. Ohio 1988); *see also In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (stating that, "to justify payment of a prepetition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the [c]hapter 11 process"). As this Court has held, "[p]ursuant to 11 U.S.C. § 105(a) the Court may authorize the payment of prepetition claims when such payments are necessary to the continued operation of the Debtor." *In re Wehrenberg, Inc.*, 260 B.R. 468, 469 (Bankr. E.D. Mo. 2001); *see In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177).

38. The "necessity of payment" doctrine further supports the relief requested herein. This doctrine recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor. *See Miltenberger v. Logansport C. & S.W.R. Co.*, 106 U.S. 286, 311 (1882); *Southern Ry. Co. v. Flournoy*, 301 F.2d 847, 852 (4th Cir. 1962); *Ionosphere Clubs*, 98 B.R. at 176; *see also In re Chateaugay Corp.*, 80 B.R. 279 (S.D.N.Y. 1987); *In re Just For Feet, Inc.*, 242 B.R. 821, 825-26 (D. Del. 1999) ("[n]ecessity of payment doctrine recognizes that paying certain prepetition claims may be necessary to realize the goal of chapter 11 – a successful reorganization"). This doctrine is consistent with the paramount goal of chapter 11, "facilitating the continued operation and rehabilitation of the debtor . . . ." *Ionosphere Clubs*, 98 B.R. at 176.

39. The Debtor submits that honoring the Employee Obligations and continuing the Employee Programs are essential to the Debtor's ongoing operations and should be authorized under the circumstances. The uncertainty of any debtor-employer's future often damages employee morale at a critical time when the debtor requires its employees' loyalty the most. In this case, honoring the Employee Obligations and continuing the Employee Programs will minimize the hardship the Employees would otherwise endure if payroll and benefits were interrupted.

40. Honoring these obligations will also prevent a rapid loss of Employees that may otherwise occur if the Employees lost their reasonable expectation of compensation and benefits for their services. Because the Debtor recently reduced its workforce, as described in the First Day Declaration, there is considerable risk that the Debtor's Employees may decline to cooperate and perform their duties if the Debtor ceases to satisfy the Employee Obligations in the ordinary

course. The Debtor believes that the continued payment of Employee Obligations is both critical and justified based on the importance of the Employees to the Debtor's operations and, therefore, seeks authority, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, to pay the Employee Obligations and to continue its Employee Programs, as described in the Motion.

B.  **The Unpaid Compensation is Entitled to Priority Status.**

41.  The Debtor submits that any unpaid compensation and other benefits earned within the one hundred eighty (180) days prior to the Petition Date that the Debtor seeks to pay are entitled to priority status under sections 507(a)(4) and (a)(5) of the Bankruptcy Code and individually do not exceed $12,850. Courts have recognized future priority status as a valid basis for allowing the payment of wage claims. *See, e.g., In re Braniff, Inc.*, 218 B.R. 628, 633 (Bankr. M.D. Fla. 1998) (explaining that prepetition wage and wage-related claims are often allowed to be paid post-petition where the claims are entitled to priority because "in all but the direst of circumstances, the debtor will ultimately pay the prepetition wages because of their very high priority [and, therefore, the] court authorizes their payment early in the case rather than requiring that the employees wait for payment at the end of the case"). Accordingly, the Debtor submits that granting the relief requested herein will not have an adverse effect on other unsecured creditors of the Debtor's estate. The payment of these amounts is necessary here, and the Debtor has articulated a sound business justification for the payment of these obligations.

C.  **The Court Should Authorize Financial Institutions to Honor and Process Related Checks and Transfers.**

42.  The Debtor requests that the Court authorize and direct all applicable banks and financial institutions to (i) fund transfer requests made by the Debtor or any third-party agents or administrators acting on the Debtor's behalf, and receive, process, honor and pay all checks presented for payment related to claims that the Debtor requests authority to pay through the

12

Motion regardless of whether the checks were presented or fund transfer requests were submitted before or after the Petition Date and (ii) rely on the Debtor's designation of any check as approved by the Court's order on this Motion. The Debtor further requests that it be authorized to issue new post-petition checks, or effect new fund transfers, for the Employee Obligations to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

D.       **Immediate Relief is Necessary to Avoid Immediate and Irreparable Harm.**

43.      Bankruptcy Rule 6003 provides that to the extent "relief is necessary to avoid immediate and irreparable harm," a Bankruptcy Court may approve a motion to "pay all or part of a claim that arose before the filing of the petition" prior to twenty-one days after the Petition Date. Fed. R. Bankr. P. 6003. The Debtor submits that the facts described herein demonstrate the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor's business operations and the value of the Debtor's estate, and that Bankruptcy Rule 6003 has been satisfied to permit such payments, if any are necessary.

44.      To implement the foregoing immediately, the Debtor further seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court others otherwise." As set forth above, if the Debtor cannot assure its Employees that it will honor the Employee Obligations, they may leave the Debtor's employ, which would cause a significant disruption in the Debtor's operations and undermine its reorganization. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the fourteen (14)-day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

## **NOTICE**

45. Notice of this Motion will be provided to (i) the Office of the United States Trustee for the Eastern District of Missouri, (ii) the Debtor's twenty (20) largest unsecured creditors, (iii) the Internal Revenue Service; and (iv) all parties that have requested notice in this chapter 11 case pursuant to Bankruptcy Rule 2002. Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-3(A)(1). The Debtor submits that, under the circumstances, no other or further notice is required.

46. No previous application for the relief sought herein has been made to this or any other Court.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**WHEREFORE**, the Debtor respectfully requests entry of an order granting the relief requested herein, together with such other and further relief as the Court deems just and proper.

Dated: June 30, 2017
St. Louis, Missouri

Respectfully submitted,

**SPENCER FANE LLP**

/s/ Ryan C. Hardy
Eric C. Peterson MO #62429
Ryan C. Hardy MO #62926
1 North Brentwood Boulevard
Suite 1000
St. Louis, MO 63105
(314) 863-7733
(314) 862-4656 – Fax
epeterson@spencerfane.com
rhardy@spencerfane.com

Lisa A. Epps MO#48544
1000 Walnut, Suite 1400
Kansas City, MO 64106
(816) 474-8100
(816) 474-3216– Fax
lepps@spencerfane.com

- and -

**CULLEN AND DYKMAN LLP**

S. Jason Teele, Esq.
Nicole Stefanelli, Esq.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 849-0220
steele@cullenanddykman.com
nstefanelli@cullenanddykman.com

*Proposed Co-Counsel to the Debtor and Debtor-in-Possession*