## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>**TROVERCO, INC.,**<br><br>Debtor. | **Chapter 11**<br><br>**Case No. 17-44474**<br><br>**Hearing Date and Time:**<br>July 5, 2017, 10:30 a.m.<br><br>**Hearing Location:**<br>Courtroom 7 South, Thomas F. Eagleton U.S. Courthouse<br><br>**Response Due:**<br>July 5, 2017 |

## DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING, BUT NOT DIRECTING, THE DEBTOR TO CONTINUE PREPETITION INSURANCE COVERAGE AND (II) AUTHORIZING AND DIRECTING FINANCIAL INSTITUTIONS TO HONOR RELATED CHECKS AND TRANSFERS

Troverco, Inc., the above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its proposed counsel, submits this motion (the "Motion"), pursuant to sections 105(a), 363(b) and 503(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order (i) authorizing, but not directing, the Debtor to continue prepetition insurance coverage and pay all related premiums and obligations thereunder and (ii) authorizing and directing financial institutions to honor related checks and transfers. In support of this Motion, the Debtor respectfully states as follows:

## INTRODUCTION

1.      On June 29, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.

2.      The Debtor continues in the operation and management of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.      No trustee, examiner or official committee has been appointed in this chapter 11 case.

4.      Simultaneously with the filing of this Motion, the Debtor filed the *Declaration of Joseph E. Trover, Jr. in Support of the Debtor's Chapter 11 Petition and First Day Motions* (the "First Day Declaration").  A more detailed factual background of the Debtor's business and operations, as well as the events leading to the filing of this chapter 11 case, is more fully set forth in the First Day Declaration and incorporated herein by reference.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6.      The statutory predicates for the relief sought herein are sections 105(a), 363(b) and 503(b) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

## RELIEF REQUESTED

7.      In order to prevent any disruption of the Debtor's insurance coverage and any attendant harm to the Debtor's business that such disruption would cause, the Debtor seeks authorization, but not the direction, to make any premium payments as necessary and to perform any other prepetition obligations that may be necessary to maintain its insurance coverage.

8.      Accordingly, by this Motion, the Debtor requests entry of an order (i) authorizing, but not directing, the Debtor to continue prepetition insurance coverage and pay

2

all related premiums and obligations thereunder and (ii) authorizing and directing financial institutions to honor related checks and electronic transfers.

## SUMMARY OF THE DEBTOR'S INSURANCE POLICIES

9.      In connection with the ordinary course operation of its business, the Debtor maintains various insurance policies for property, general liability, equipment breakdown, commercial automobile liability and physical damage, umbrella coverage, crime and employment practices, D&O and fiduciary liability (collectively, the "Insurance Policies") through several different insurance carriers (the "Insurance Carriers") including, but not limited to, those Insurance Policies and Insurance Carriers listed Exhibit A hereto.[1]   The Insurance Policies are essential to the ongoing operation of the Debtor's business.

10.      The Debtor employs J.W. Terrill to assist with the procurement and negotiation of its Insurance Policies.   As of the Petition Date, the Debtor does not believe that it has any outstanding obligations to J.W. Terrill for its brokerage services.

## A.      Liability and Property Insurance Policies

11.      The Debtor also maintains various liability and property insurance policies (the "Liability and Property Insurance Policies").   The annual premiums for the Liability and Property Insurance Policies total approximately $520,358.   As of the Petition Date, all premiums for the Liability and Property Insurance Policies were paid, other than a monthly installment in the amount of $31,570.62 due to Travelers for the Debtor's commercial automobile policy.

---

[1]      In addition to the Insurance Policies listed on Exhibit A hereto, the Debtor maintains numerous insurance policies and programs with respect to employee health, dental, disability, and life insurance benefits. These policies are addressed in a separate motion filed in this case pertaining to the Debtor's employee wages and benefits programs.

9874407.1

**B.**     <u>Workers' Compensation Policies</u>

12.     Under the laws of the various jurisdictions in which the Debtor operates, the Debtor is required to maintain workers' compensation policies the "Workers' Compensation Policies") to provide its employees with workers' compensation coverage for claims arising from or related to their employment with the Debtor (the "Workers' Compensation Claims"). The annual premiums for the Workers' Compensation Policies total approximately $409,476, which are paid on a monthly basis. The Debtor does not owe any prepetition monthly installments.

<u>BASIS FOR RELIEF</u>

13.     By this Motion, the Debtor requests entry of an order (i) authorizing, but not directing, the Debtor to continue, in its discretion, the Insurance Policies in accordance with the practices and procedures that were in effect before the Petition Date and pay, in its discretion, all obligations arising under or in connection with the Insurance Policies, to the extent there are any (collectively, the "Insurance Obligations"), regardless of whether such obligations arose or relate to the period before or after the Petition Date and (ii) authorizing and directing financial institutions to honor related checks and electronic transfers.

**A.**     **The Court Should Authorize, But Not Direct, the Debtor to Continue its Insurance Policies and Pay All Insurance Obligations.**

14.     Pursuant to section 503(b)(1) of the Bankruptcy Code, a debtor may incur and, subject to notice and a hearing, the Court may allow, as administrative expenses, among other things, "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). Section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession "after notice and a hearing" to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

15.    Pursuant to section 363(b), a bankruptcy court is empowered to authorize a debtor to expend funds in the bankruptcy court's discretion outside of the ordinary course of the debtor's business.  *See In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 155 (D. Del. 1999) ("Section 363(b) should be interpreted liberally to provide a bankruptcy judge with 'substantial freedom to tailor his orders to meet differing circumstances' and to avoid 'shackling the judge with unnecessarily rigid rules'") (internal citation omitted); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (holding that "[s]ection 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of circumstances").  Although section 363(b) does not set forth a standard for determining when it is appropriate to authorize transactions outside of the ordinary course, courts generally grant such relief if the debtor articulates a sound business purpose.  *See Fulton State Bank v. Schipper (In re Schipper)*, 993 F.2d 513, 515 (7th Cir. 1991).  In addition, "[a] debtor's business decision should be approved by the court unless it is shown to be so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith or whim or caprice."  *In re Aerovox, Inc.*, 269 B.R. 74, 80 (Bankr. D. Mass. 2001) (internal citation omitted).

16.    The Debtor has compelling business reasons for seeking to maintain its Insurance Policies in force and to pay all necessary premiums.  The insurance coverage provided under the Insurance Policies is essential for preserving the Debtor's business and assets, and, in many cases, such coverage is required by various regulations, laws, and contracts that govern the Debtor's business.  If the Debtor does not continue to perform its obligations under the Insurance Policies, its coverage under the Policies could be voided.  Disruption of insurance coverage would expose the Debtor to serious risks, including: (a) the possible incurrence of direct liability for the payment of claims that otherwise would have been payable by the Insurance Providers

9874407.1

under the Insurance Policies; (b) the possible incurrence of material costs and other losses that otherwise would have been reimbursed by the Insurance Providers under the Insurance Policies; (c) the possible loss of good-standing certification to conduct business in states that require the Debtor to maintain certain levels of insurance coverage; (d) the possible inability to obtain similar types of insurance coverage; and (e) the possible incurrence of higher costs for re-establishing lapsed policies or obtaining new insurance coverage. Any or all of these consequences would cause serious and irreparable harm to the Debtor's business and restructuring efforts, as they would expose the Debtor to higher costs and increased risks of loss, at a minimum. To avoid those consequences, the relief requested herein should be granted.

17. Consistent with the debtor's fiduciary duties, courts have also authorized payment of prepetition obligations under section 363(b) of the Bankruptcy Code where a sound business purpose exists for doing so. *See In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a section 363(b) application must find from the evidence presented before him or her a good business reason to grant such application); *In re Trilogy Dev. Co., LLC*, 2010 Bankr. LEXIS 5636, at *3–4 (Bankr. W.D. Mo. 2010); *In re Channel One Comm., Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 674 (Bankr. S.D.N.Y. 1989) (noting the standard for determining a section 363(b) motion is "a good business reason").

18. Numerous courts in this and other jurisdictions have granted relief similar to that requested herein in other chapter 11 cases. *See, e.g., In re Arch Coal, Inc.*, No. 16- 40120 (CER) (Bankr. E.D. Mo. Jan. 14, 2016); *In re Bakers Footwear Grp. Inc.*, No. 12-49658 (CER) (Bankr.

6

E.D. Mo. Oct. 9, 2012); *In re Alpha Natural Resources, Inc.*, No. 15-33896 (KRH) (Bankr. E.D. Va. Sept. 3, 2015); *In re Walter Energy, Inc.*, No. 15-02741 (TOM) (Bankr. N.D. Ala. July 16, 2015); *In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D. Va. June 4, 2015); *In re Magnetation LLC*, No. 15-50307 (GFK) (Bankr. D. Minn. May 7, 2015); *In re Allied Nev. Gold Corp.*, No. 15-10503 (MFW) (Bankr. D. Del. Apr. 15, 2015); *In re James River Coal Co.*, No. 14-31848 (KRH) (Bankr. E.D. Va. April 10, 2014); *In re Patriot Coal Corp.*, No. 12-12900 (SCC) (Bankr. S.D.N.Y. Aug. 2, 2012); *In re US Fidelis, Inc.*, No. 10-41902 (CER) (Bankr. E.D. Mo. Mar. 9, 2010).

19.     Here, the Debtor's ability to pay any prepetition obligations on account of the Insurance Policies, to the extent owed, is critical to maximizing the value of its estate, as set forth above.

20.     Further, to the extent any Insurance Policy or related agreement is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, the Debtor does not, at this time, seek to assume such contract.  Accordingly, any payment made by the Debtor as described herein should not be deemed to constitute a post-petition assumption or adoption of the programs, policies, or agreements as executory contracts pursuant to section 365 of the Bankruptcy Code.  Nor should anything in the Motion be construed as impairing the Debtor's right to contest the amount or priority of any obligations that may be owed to the Insurance Carriers, and the Debtor expressly reserves all of its rights with respect thereto.

21.     The Debtor also requests that the Court authorize the Debtor's banks, when requested by the Debtor in its sole discretion, to process, honor, and pay any and all checks or electronic fund transfers drawn on the Debtor's bank accounts to pay any prepetition obligations due to the Insurance Carriers, whether such checks or other requests were submitted prior to or

after the Petition Date. The Debtor further requests that all such banks be authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved pursuant to this Motion.

**B.**     **Immediate Relief is Necessary to Avoid Immediate and Irreparable Harm.**

22.     Bankruptcy Rule 6003 provides that to the extent "relief is necessary to avoid immediate and irreparable harm," a Bankruptcy Court may approve a motion to "pay all or part of a claim that arose before the filing of the petition" prior to twenty-one days after the Petition Date. Fed. R. Bankr. P. 6003. The Debtor submits that the facts described herein demonstrate the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor's business operations and the value of the Debtor's estate, and that Bankruptcy Rule 6003 has been satisfied to permit such payments, if any are necessary.

23.     To implement the foregoing immediately, the Debtor further seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court others otherwise." As set forth above, any delay in paying outstanding premiums owed to the Insurance Carriers, to the extent that there are any, would be detrimental to the Debtor and its estate. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the fourteen (14)-day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

## NOTICE

24.     Notice of this Motion will be provided to (i) the Office of the United States Trustee for the Eastern District of Missouri, (ii) the Debtor's twenty (20) largest unsecured

8

9874407.1

creditors, (iii) the Internal Revenue Service; (iv) all parties that have requested notice in this chapter 11 case pursuant to Bankruptcy Rule 2002; and (v) the Insurance Carriers. Notice of this Motion and any order hereon will be served in accordance with Local Rule 9013-3(A)(1). The Debtor submits that, under the circumstances, no other or further notice is required.

25.    No previous application for the relief sought herein has been made to this or any other Court.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

9874407.1

**WHEREFORE**, the Debtor respectfully requests entry of on order granting the relief requested herein, together with such other and further relief as the Court deems just and proper.

Dated:  June 30, 2017
St. Louis, Missouri

Respectfully submitted,

**SPENCER FANE LLP**

/s/ Ryan C. Hardy
Eric C. Peterson MO #62429
Ryan C. Hardy MO #62926
1 North Brentwood Boulevard
Suite 1000
St. Louis, MO 63105
(314) 863-7733
(314) 862-4656 – Fax
epeterson@spencerfane.com
rhardy@spencerfane.com

Lisa A. Epps MO#48544
1000 Walnut, Suite 1400
Kansas City, MO 64106
(816) 474-8100
(816) 474-3216– Fax
lepps@spencerfane.com

- and -

**CULLEN AND DYKMAN LLP**

S. Jason Teele, Esq.
Nicole Stefanelli, Esq.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 849-0220
steele@cullenanddykman.com
nstefanelli@cullenanddykman.com

*Proposed Co-Counsel to the Debtor and
Debtor-in-Possession*

9874407.1

**Exhibit A**
**List of Insurance Policies**

| Insurer | Policy Type | Policy No. | Policy Period | Premium |
|---|---|---|---|---|
| Travelers | Property, General Liability | Y630751K1893TIL16 | 09/01/2016 – 09/01/2017 | $36,455 |
| Travelers | Equipment Breakdown | M5JBME16G659763 | 09/01/2016 – 09/01/2017 | $2,796 |
| Travelers | Automobile Liability & Physical Damage | Y810751K1893 | 09/01/2016 – 09/01/2017 | $378,909 |
| Missouri Employers Mutual | Employers Liability & Workers' Compensation (Missouri) | MEG201771100 | 09/01/2016 – 09/01/2017 | $149,705 |
| Argonaut Insurance | Workers' Compensation (Other States) | WC92806841898 | 09/01/2016 – 09/01/2017 | $259,571 |

11

| Insurer | Policy Type | Policy No. | Policy Period | Premium |
|---|---|---|---|---|
| Argonaut Insurance | Workers' Compensation (OH Gap Coverage) | WC928188465404 | 09/01/2016 – 09/01/2017 | $200 |
| CNA | Umbrella | L4012219118 | 09/01/2016 – 09/01/2017 | $85,262 |
| Travelers | Crime | 106270435 | 4/15/2016- 4/15/2017 | $3,085 |
| Ace | Employment Practices, Directors & Officers, Fiduciary Liability | G27573411002 | 4/15/2016- 4/15/2017 | $13,851 |

9874407.1