## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| **In re:** | **Chapter 11** |
| | **Case No. 17-44474** |
| **TROVERCO, INC.,** | **Objection Deadline**: August 8, 2017 |
| | **Hearing Date and Time** (if necessary): August 15, 2017, 10:30 a.m. |
| **Debtor.** | **Hearing Location** (if necessary): Courtroom 7 South, St. Louis |

**NOTICE OF DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF THREE TWENTY-ONE CAPITAL PARTNERS AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO THE DEBTOR EFFECTIVE AS OF THE PETITION DATE**

PLEASE TAKE NOTICE THAT this Application is scheduled for hearing on August 15, 2017, at 10:30 a.m. (prevailing Central time), in Bankruptcy Courtroom Seventh Floor North, in the Thomas F. Eagleton U.S. Courthouse, 11 South Tenth Street, St. Louis, Missouri 63102.

**WARNING: ANY RESPONSE OR OBJECTION TO THIS APPLICATION MUST BE FILED WITH THE COURT BY AUGUST 8, 2017. A COPY MUST BE PROMPTLY SERVED UPON THE UNDERSIGNED. FAILURE TO FILE A TIMELY RESPONSE MAY RESULT IN THE COURT GRANTING THE RELIEF REQUESTED HEREIN.**

**DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING
THE EMPLOYMENT AND RETENTION OF THREE TWENTY-ONE CAPITAL
PARTNERS AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO
THE DEBTOR EFFECTIVE AS OF THE PETITION DATE**

Troverco, Inc., the above-captioned debtor and debtor-in-possession (the "<u>Debtor</u>"), by

and through its proposed counsel, submits this application (the "<u>Application</u>") for entry of an

order pursuant to sections 327(a), 328 and 1107 of title 11 of the United States Code (the

"<u>Bankruptcy Code</u>") and Rule 2014 of the Federal Rules of Bankruptcy Procedures (the

"<u>Bankruptcy Rules</u>") authorizing the employment and retention of Three Twenty-One Capital

Partners ("<u>321</u>") as financial advisor and investment banker to the Debtor effective as of the

Petition Date (as defined herein).  In support of the Application, the Debtor respectfully states as

follows:

## JURISDICTION

1.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core

proceeding pursuant to 28 U.S.C. § 157(b).

2.      The statutory predicates for the relief sought herein are sections 327, 328 and

1107 of the Bankruptcy Code and Bankruptcy Rule 2014.

## BACKGROUND

3.      On June 29, 2017 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for

relief pursuant to chapter 11 of the Bankruptcy Code (the "<u>Chapter 11 Case</u>").

4.      The Debtor continues to operate its business and manage its property as a debtor-

in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No trustee, examiner or official committee has been appointed in this chapter 11

case.

6.      A more detailed factual background of the Debtor's business and operations, as well as the events leading to the filing of this chapter 11 case, is set forth in the *Declaration of Joseph E. Trover, Jr. in Support of the Debtor's Chapter 11 Petition and First Day Motions* [Docket No. 19] (the "First Day Declaration").

## RELIEF REQUESTED

7.      By this Application, the Debtor seeks authorization to employ and retain 321 as its financial advisor and investment banker in connection with the Chapter 11 Case, effective as of the Petition Date, pursuant to the terms and conditions of the Engagement Agreements (defined below).

## SERVICES TO BE PROVIDED

8.      The Debtor selected 321 to serve as its financial advisor and investment banker because of its considerable experience in the areas of turnarounds, consulting, refinancing, sales as going-concerns, joint ventures, mergers, operating due diligence, creditor advisory, and financial/operational restructuring and other areas in which 321 might be asked to assist in the Chapter 11 Case.  The Debtor believes that 321 is duly qualified to provide it with advisory and investment banking services throughout this proceeding, and the services of 321 are necessary and essential to assist the Debtor in proposing a plan of reorganization and/or evaluating and marketing its assets to maximize the proceeds for the benefit of creditors.

9.      The nature and extent of services that 321 may render to the Debtor include, but are not limited to the following:

(a)      advising the Debtor in connection with its business plan and financial projections;

(b)      attending meetings with the Debtor and other parties in interest and providing testimony, if necessary, before the Bankruptcy Court;

-2-

(c)    assisting the Debtor in negotiations with creditors, contract counterparties, lessors and other parties in interest; and

(d)    advising and assisting the Debtor in connection with any potential sale, transfer or other disposition of its assets, including taking the necessary steps to market the Debtor's assets in a manner to maximize the value thereof and to generate the highest and best offers therefor, providing assistance with respect to the marketing or disposition of the assets and perform related services necessary to maximize the proceeds to be realized for the assets, facilitating the dissemination of information to interested parties with respect to the Debtor's assets and taking any other acts to prepare for, conduct and effectuate the sale and to insure the highest possible price(s) and/or best offer(s) for a sale, transfer or other disposition of the Debtor's assets;

(e)    providing general financial and restructuring advisory services in connection with the Debtor's Chapter 11 Case.

10.    The services described herein and in the Engagement Agreements are necessary to enable the Debtor to maximize the value of its assets and successfully complete its restructuring.

## PROFESSIONAL COMPENSATION

11.    The Debtor retained 321 in May 2016 to provide certain advisory, restructuring analysis and valuation services pursuant to an agreement between the Debtor and 321 dated May 13, 2016 (the "Initial Advisory Agreement").  A copy of the Initial Advisory Agreement is attached hereto as Exhibit A.  Prior to the Petition Date, the Debtor paid 321 a fee of $40,000 pursuant to the terms of the Initial Advisory Agreement.

12.    On May 13, 2016, the Debtor and 321 entered into a separate agreement (the "Investment Banking Agreement") pursuant to which 321 agreed to provide investment banking services in connection with a potential recapitalization, sale or merger of the Debtor.  A copy of the Investment Banking Agreement is attached hereto as Exhibit B.  The Investment Banking Agreement provides that 321 will be paid a transaction fee (the "Transaction Fee"), payable in

-3-

cash at the closing of any Stock Sale, Asset Sale, Lease, Equity Investment, sale of business assets or Merger (collectively, a "Transaction"), based upon the Gross Sale Proceeds (as defined in the Investment Banking Agreement) as follows:

- Eight Percent (8%) of the first $1,000,000 of Gross Sales Proceeds;

- Seven Percent (7%) of Gross Sales Proceeds between $1,000,001 and $2,000,000;

- Six Percent (6%) of Gross Sales Proceeds between $2,000,001 and $3,000,000;

- Five Percent (5%) of Gross Sales Proceeds between $3,000,001 and $4,000,000;

- Four Percent (4%) of Gross Sales Proceeds between $4,000,001 and $5,000,000;

- Three Percent (3%) of Gross Sales Proceeds above $5,000,000.

13.      Prior to the Petition Date, the Debtor reimbursed 321 for $6,500 of expenses incurred, in accordance with the terms of the Investment Banking Agreement.  The Debtor did not pay any fees to 321 on account of the Investment Banking Agreement prior to the Petition Date.

14.      On May 16, 2017, the Debtor and 321 entered into a revised advisory agreement (the "Revised Advisory Agreement" and together with the Investment Banking Agreement, the "Engagement Agreements").  A copy of the Revised Advisory Agreement is attached hereto as Exhibit C.  The Engagement Agreement provides that 321 will be paid a fee of $6,250 per week payable on a monthly basis in advance (the "Retainer Fee"), plus expenses.  Prior to the Petition Date, the Debtor paid 321 the following Retainer Fees pursuant to the Revised Advisory Agreement: (i) $12,500 for May 2017, (ii) $25,000 for June 2017 and (iii) $25,000 for July 2017.

15.      Upon approval of this Motion, the Debtor will pay 321 the Retainer Fee, on a monthly basis in advance in accordance with the terms of the Revised Advisory Agreement, during this Chapter 11 Case, and any Transaction Fee payable in accordance with the terms of

-4-

the Investment Banking Agreement.  The Debtor will also reimburse 321 for its actual and necessary expenses incurred in performing any services under the Engagement Agreements.

16.    Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person "on any reasonable terms and conditions of employment, including on a retainer. . . ." 11 U.S.C. § 328(a).  321's fee structure appropriately reflects the nature and scope of services to be provided by 321, 321's substantial experience with respect to restructuring and investment banking and the fee structures typically used by other financial advisors and investment bankers that do not bill their clients on an hourly basis.  Accordingly, the Debtor submits that the Retainer Fee and Transaction Fee proposed in the Engagement Letters are reasonable under the circumstances.

17.    321 will file interim and final fee applications for allowance of its compensation and expenses, in accordance with the applicable provisions of the Bankruptcy Code, the applicable Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, and such other procedures as may be fixed by order of this Court; provided, however, that 321 shall not be subject to the standard of review under section 330 of the Bankruptcy Code.

18.    As with many other firms in its industry, 321 does not maintain time records for the hours or partial hours spent by its professionals for a client.  Accordingly, 321's fee applications will not include a record of the time spent on each matter.

**DISINTERESTEDNESS OF PROFESSIONALS**

19.    The Debtor submits that the retention of 321 under the terms described herein and in the Engagement Agreement is appropriate under sections 327, 328 and 1107 of the Bankruptcy Code.  Section 327(a) of the Bankruptcy Code (applicable pursuant to section 1107 of the Bankruptcy Code) empowers a debtor-in-possession, with the Court's approval, to employ

-5-

professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent them or assist the [debtor in possession] in carrying out its duties under this title." 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy Code defines "disinterested person" as a person that:

> (A)    is not a creditor, an equity security holder, or an insider;
>
> (B)    is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
>
> (C)    does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtors, or for any other reason

11 U.S.C. § 101(14).

20.    Furthermore, section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case."

21.    As set forth in the Declaration of Ervin M. Terwilliger in support of this Application, attached hereto as <u>Exhibit D</u> (the "<u>Terwilliger Declaration</u>") 321 (i) is not a creditor, an equity security holder, or an insider of the Debtor; (ii) is not and was not, within 2 years before the Petition Date, a director, officer, or employee of the Debtor; and (iii) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor. Accordingly, the Debtor submits that 321 is a disinterested person as that term is defined in section 101(14) of the Bankruptcy Code.

35001.1 448071v1

22.     To the best of the Debtor's knowledge, based on the Terwilliger Declaration, the partners and employees of 321 do not have any connection with the Debtor, its creditors, or any other parties in interest, their respective attorneys and accountants, Office of the United States Trustee for the Eastern District of Missouri, any person employed in the Office of the United States Trustee for the Eastern District of Missouri, or any Bankruptcy Judge currently serving on the United States Bankruptcy Court for the Eastern District of Missouri.

23.     Accordingly, 321 does not hold or represent an interest adverse to the Debtor's estate.

## NOTICE

24.     No trustee or examiner has been appointed in this Chapter 11 Case.  Notice of this Application has been provided to:  (a) the U.S. Trustee; (b) counsel for the Debtor; and (c) all parties that have filed a request for notice pursuant to Bankruptcy Rule 2002.  The Debtor respectfully submits that no further notice of this Application is required or necessary.

## NO PRIOR REQUEST

25.      No prior application or motion for the relief requested herein has been made by the Debtor to this or any other Court.

**WHEREFORE**, for the reasons set forth herein, the Debtor respectfully requests the entry of an order granting the relief requested herein and such other and further relief as the Court deems just and proper.

35001.1 448071v1

July 14, 2017

Respectfully submitted,

**TROVERCO, INC., Debtor-in-Possession**

/s/ Joseph E. Trover, Jr.
Its Chief Executive Officer

By and through its proposed counsel:

**SPENCER FANE LLP**

/s/ Ryan C. Hardy
Ryan C. Hardy                MO#62926
1 North Brentwood Boulevard
Suite 1000
St. Louis, MO 63105
(314) 863-7733
(314) 862-4656 – Fax
rhardy@spencerfane.com

Lisa A. Epps                MO#48544
Zachary R.G. Fairlie        MO#68057
1000 Walnut, Suite 1400
Kansas City, MO 64106
(816) 474-8100
(816) 474-3216– Fax
lepps@spencerfane.com
zfairlie@spencerfane.com


- and -

**CULLEN AND DYKMAN LLP**

S. Jason Teele, Esq.
Nicole Stefanelli, Esq.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 849-0220
steele@cullenanddykman.com
nstefanelli@cullenanddykman.com

-8-

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 14th day of July, a true and correct copy of the foregoing was sent by electronic mail to the Office of the United States Trustee, Eastern District of Missouri, and deposited in the U.S. Mail, first-class postage pre-paid, addressed to those appearing on or who would appear on the Master Notice List.


/s/ Ryan C. Hardy

35001.1 448071v1

**<u>Exhibit A</u>**



THREE TWENTY-ONE
CAPITAL PARTNERS

Joseph Trover
President/CEO
Troverco, Inc.
727 N. First St
St. Louis, MO 63102

Dear Mr. Trover:

This letter outlines Three Twenty-One Capital Partners, LLC (321) Advisory Engagement on behalf of Troverco, Inc. (TROVERCO and/or CLIENT).

TROVERCO wishes 321 to perform certain advisory, restructuring analysis and valuation services (SERVICES) for the CLIENT, culminating in a STATE OF THE COMPANY summary report.  Upon execution of this letter by each of the parties below and receipt of the retainer described below, this letter will constitute an agreement between the TROVERCO and 321.

**Description of Advisory Services**

1. Personnel.  In connection with this engagement, 321 shall make available to the CLIENT:

   a. 321's team of Advisory and Investment Banking Team (ADVISORY TEAM), as outlined in Exhibit A, and as deemed appropriate and necessary by Ervin Terwilliger, Managing Partner of 321; and

2. Duties.  The ADVISORY TEAM, in cooperation with the President of the TROVERCO (the "CEO") and the CLIENT's Senior Management (MANAGEMENT), shall;

   a. Perform a financial review of the Company, including but not limited to a review and assessment of historical, current and projected financial reports, including without limitation its short and long-term projected cash flows, YTD Budget vs. Actual, Cash Burn Analysis, and Breakeven Analysis;

   b. Review and analyze the CLIENT's Sales and Marketing Strategy and implementation

   c. Identify cost reduction and operational improvement opportunities;

   d. Develop restructuring plans or strategic alternatives for maximizing the enterprise value of the Company's various assets;

   e. Provide Macro-Market Insights

   f. Interview key personnel

   g. Review contracts

   h. Provide a business valuation for Troverco

    i.   Present go-forward strategy, evaluating turnaround vs. sale and/or recapitalization

    j.   Summarize all findings in a State of the Business Report, to be presented in person to the CEO and Shareholders

    k.   Be prepared to execute on the recommended course(s) of action upon completion of the 60-Day Advisory Engagement

3. **Projections; Reliance; Limitation of Duties.**  You understand that the services to be rendered by the CROs and any Additional Personnel may include the preparation of projections and other forward-looking statements, and that numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections and other forward-looking statements.  In addition, the CROs and any Additional Personnel will be relying on information provided by other members of the Company's management in the preparation of those projections and other forward-looking statements. Neither the CROs, any Additional Personnel nor 321 makes any representation or guarantee that an appropriate restructuring proposal or strategic alternative can be formulated for the Company, that any restructuring proposal or strategic alternative presented to the President will be more successful than all other possible restructuring proposals or strategic alternatives, that restructuring is the best course of action for the Company or, if formulated, that any proposed restructuring plan or strategic alternative will be accepted by any of the Company's creditors, shareholders and other constituents.  Further, neither the CROs, and any Additional Personnel nor 321 assumes responsibility for the selection of any restructuring proposal or strategic alternative that any such officer assists in formulating and presenting to the President and the CRO and any Additional Personnel shall be responsible for implementation only of the proposal or alternative approved by the President and only to the extent and in the manner authorized and directed by the President.

4. **Sale of the Business.**  In the event that the recommendation is made, and CLIENT agrees to Seek Investors, Sell Equity and/or Sell Certain Assets, Recapitalize, Merge or Wind-Down TROVERCO (Collectively, the TRANSACTION), CLIENT will utilize Three Twenty-One Capital Partners Investment Banking team and work product from this Advisory Engagement to market TROVERCO, pursuant to the Engagement Agreement attached hereto as Exhibit B.


**Compensation**

1. 321 will be paid Forty Thousand Dollars ($40,000) by the Companies for the SERVICES at a rate of Twenty Thousand Dollars ($20,000) per month for a period of 2 months.

2. CLIENT will promptly reimburse 321 for all expenses upon invoice and supply of supportive documentation.

3. The Company shall promptly remit to 321 a retainer in the amount of $20,000 for the first month of service.

4. In the event that the CLIENT proceeds with the Sale of the Business, 321 will credit 1/3rd of the Advisory Services fee against the success fee due upon a successful TRANSACTION.


**Term**

1. The engagement will commence as of the date hereof and will last a minimum of (2) months.  The engagement will automatically extend in monthly increments so long as neither 321 nor The Companies cancel the agreement.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement, as of the day and year first above written.

TROVERCO, INC.

By: _____

Joseph Trover          5 - 13 - 16
President/CEO

THREE TWENTY-ONE CAPITAL
PARTNERS, LLC

By: _____

Ervin M. Terwilliger
Managing Partner

## **Exhibit B**

## AGREEMENT BETWEEN TROVERCO, INC.
## AND THREE TWENTY-ONE CAPITAL PARTNERS, LLC.

THIS AGREEMENT is made this 13 th day of May, 2016 by and between
**TROVERCO, INC.** ("CLIENT"), and THREE TWENTY-ONE CAPITAL PARTNERS, LLC.
("321").

R E C I T A L S

WHEREAS, CLIENT desires to Seek Investors and/or Sell TROVERCO, INC. and/or certain
assets via a Stock Sale, Asset Sale, Lease, Equity Investment, sale of business assets
("ASSETS") or Merger (collectively, the "TRANSACTION"); and

WHEREAS, 321 is an enterprise specializing in entirety sales, strategic mergers, equity
investments, joint ventures, debt and equity recapitalizations, purchase of chattels and real
property, sale of assets; and

WHEREAS, 321 is an enterprise associated whose members have experience in consulting with
over 500 companies; and

WHEREAS, 321 has substantial experience in distressed business transactions, locating buyers,
investors, debt, and joint venture partners, selling as "going concerns" or otherwise disposing
and refinancing of major properties, including properties and related establishments owned or
leased; and

WHEREAS, CLIENT and 321 desire to enter into this Agreement regarding the services to be
performed by 321 and the compensation to be paid to 321 for its services; and

NOW THEREFORE, in consideration of the promises herein contained and other good and
valuable consideration, the receipt and sufficiency of which are hereby acknowledged, CLIENT
and 321 hereby agree, subject to all the terms, covenants, conditions and provisions hereinafter
set forth, as follows:

1. **EXCLUSIVE AGENCY.** Client hereby retains 321 as exclusive agents to utilize our
   database and client provided leads to discretely and confidentially find candidates to
   recapitalize, sell or merge CLIENT. The term of 321's exclusive agency shall begin as of the
   date of this Agreement and shall continue for three hundred sixty-five (365) days.

1

2. **SERVICES.** 321 shall perform the following services:

   (a) Work with CLIENT to devise the best course of action.

   (b) Conduct due diligence on business.

   (c) Create a marketing plan to secure any necessary financing (debt or equity).

   (d) Create financial modeling to aid in the negotiation of a plan or sale

   (e) Prepare marketing materials, confidential information memorandum and secure due diligence data room which will include information regarding the business. (CLIENT shall have final approval of all materials and their use).

   (f) Endeavor to locate parties who may have an interest in purchasing, investing and/or refinancing the business.

   (g) Circulate materials to all parties in interest regarding the business.

   (h) Respond, provide information to, communicate and negotiate with and obtain offers from interested parties and make recommendations to CLIENT as to whether or not a particular offer should be accepted.

   (i) Communicate regularly, including a weekly written report, with CLIENT in connection with the status of 321's efforts with respect to the marketing efforts.

   (j) Recommend to CLIENT the proper method of handling any specific problems encountered with respect to the marketing of the business.

   (k) Perform related services necessary to maximize the proceeds to be realized for the business.

   (l) 321 shall have no authority to bind CLIENT to any agreements or offers.

   321's services shall commence upon execution of the Agreement.

3. **OFFERING PROCEDURE.** CLIENT shall offer information regarding its business under a procedure that shall include the following:

   (a) All communications and inquiries regarding the business shall be directed to 321.

   (b) In order to be considered, all offers must be accompanied by appropriate financial material showing ability to close a transaction and include a deposit where deemed necessary.

   (c) CLIENT shall have the right to:

      (i) Determine in its sole discretion which offer is to be accepted; and

(ii) Reject, at any time, any offer which, in the CLIENT's sole discretion, is deemed to be inadequate or insufficient or not in conformity with the terms and conditions of this Agreement

(d)  CLIENT, upon notice to those parties which have submitted offers, may impose other terms and conditions as it may determine to be in the best interest of the CLIENT.

4.  **EXPENSES.**  Out-of-pocket expenses are the responsibility of the CLIENT subject to a maximum amount of Six Thousand Five Hundred Dollars ($6,500). These monies are strictly for marketing costs such as travel, postage, telephone and related expenses to meet with bankers, equity & debt sources, investors and to provide marketing and due diligence materials to prospects.  If expenses exceed the aforementioned amount, the excess will be the responsibility of 321.

5.  **GROSS SALES PROCEEDS.** The term "Gross Sales Proceeds" as used in the Agreement shall include the sum of:

(a) All cash payments;

(b) All other payments, including, but not limited to, equity or debt securities, equity interests or other property;

(c) Any deferred payments, including leases, earn-outs, licensing fees, escrows, employment or consulting agreements or financing arrangements agreed to by CLIENT, and

(d) Assumptions of any debts, including, but not limited to accounts payable and leases on real property, machinery and equipment, and vehicles.

The fees and expenses of 321, and all other closing costs and/or adjustments, including adjustments and/or payments of whatever kind to lien holders, secured parties, mortgages or otherwise shall not be deducted when computing Gross Sales Proceeds or the fee to be paid to 321.

6.  **321 FEE**.  321 will be paid in cash at settlement a fee on any TRANSACTION including refinancings, sale of equity or debt securities, and or sales of ASSETS.  The FEE shall be based upon GROSS SALES PROCEEDS and computed using the following formula:

EIGHT PERCENT (8%) FOR THE FIRST ONE MILLION DOLLARS ($0-$1MM)
SEVEN PERCENT (7%) FOR THE NEXT ONE MILLION DOLLARS ($1,000,001-$2MM)
SIX PERCENT (6%) FOR THE NEXT ONE MILLION DOLLARS ($2,000,001-$3MM)
FIVE PERCENT (5%) FOR THE NEXT ONE MILLION DOLLARS ($3,000,001-$4MM)
FOUR PERCENT (4%) FOR THE NEXT ONE MILLION DOLLARS ($4,000,001-$5MM)
THREE PERCENT (3%) FOR ALL GROSS PROCEEDS ABOVE FIVE MILLION ($5MM)

321's fee shall be the greater of the amount calculated in the formula above or a minimum fee of $200,000.

3

321 shall be entitled to its fee if a buyer purchases the ASSETS, or a claim to the ASSETS directly from a secured creditor. 321 shall be entitled to receive its fee from any purchase made within 12 months by a prospect contacted during the term of this Agreement. A prospect shall be considered a qualified lead contacted by 321 during the exclusive engagement of 321.

7. **NOTICES.** All notices, statements, demands, requests, consents, communications and certificates from any party hereto to the other, shall be made in writing and sent by United States registered mail or certified mail, return receipt requested, postage prepaid, addressed as follows:

(a) If intended for the CLIENT:

Joseph Trover
Troverco, Inc.
727 N. First St
St. Louis, MO 63102
jtrover@troverco.com

(b) If intended for the 321:

Ervin M. Terwilliger
Three Twenty-One Capital Partners, LLC
2205 Warwick Way
Suite 310
Marriottsville, MD 21104
erv@321capital.com

or other such addresses or entities either party hereto may from time to time direct by service of notice on the other party as provided above.

8. **INDEMNIFICATION.** CLIENT will verify any and all qualifications of any party it enters into a TRANSACTION. 321 will not make any verifications or warranties, including, but not limited to, counterparties' health, experience, competency, residency or financial status. 321 shall not be liable or responsible for and is hereby indemnified and held harmless by CLIENT from and against any and all claims and damages of any kind relating to the above referenced transactions, including, but not limited to, any and all claims and damages of every kind attributable to the performance or non-performance of CLIENT and /or a counterparty in any TRANSACTION.

9. **NON-ASSIGNABILITY.** Neither party hereto shall assign this Agreement or any of its rights or interest hereunder without first obtaining the other party's written consent.

10. **TIME OF THE ESSENCE.** Time, whenever mentioned herein shall be of the essence of this Agreement.

11. **ENTIRE AGREEMENT.** This is the entire Agreement between the parties hereto regarding the transaction contemplated hereby and there are no other terms, covenants, conditions, provisions, warranties, representations or statements, oral or otherwise, of any kind whatsoever. Any agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of this Agreement in whole or in part unless such

agreement is in writing and signed by the party against whom the enforcement of the change, modifications, discharge or abandonment is sought.

12. **HEADINGS.** The headings, if any, incorporated in this Agreement are for the convenience and reference only and are not part of this Agreement and shall not in any way control, define, limit or add to the terms and conditions hereof.

13. **GOVERNING LAW.** This Agreement shall be construed, interpreted and governed by the laws of the state in which the office of the CLIENT resides.

14. **COUNTERPARTS.** This Agreement may be executed in any number of counterparts, each of which shall be original, but such counterparts together shall constitute one and the same instrument.

15. **LEGAL CONSTRUCTION.** In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, the invalidity, illegality or enforceability shall not affect any other provision of this Agreement and this Agreement shall be construed as if the invalid, illegal, or unenforceable provision had never been contained in it.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement under seal, as of the day and year first above written.

TROVERCO, INC.

By: _____

Joseph Trover
President/CEO                5 - 13 - 16

THREE TWENTY-ONE CAPITAL
PARTNERS, LLC

By: _____

Ervin M. Terwilliger
Managing Partner

5

**<u>Exhibit C</u>**



**THREE TWENTY-ONE**
CAPITAL PARTNERS

2205 Warwick Way
Suite 310
Marriottsville, MD 21104
Phone: 443.325.5290
Fax: 443.703.2330

May 16, 2017

Joseph Trover
CEO/Owner TroverCo, Inc.
727 N. First Street
St. Louis, MO 63102

Joseph,

Three Twenty-One Capital Partners (the Firm) is prepared to increase our role from Investment Banking to Advisory Services and Investment Banking. To this end, we will be advising management and ownership as TroverCo begins a multi-step process to downsize and potentially wind-down operations. Throughout the process, our firm will draw upon our hundreds of distressed engagements, both in and out of bankruptcy.

While we are hopeful that TroverCo can avoid bankruptcy, the decision to remain outside of bankruptcy is not completely in TroverCo' s controls. Involuntary bankruptcy and/or vendors' unwillingness to negotiate in good faith may necessitate a filing. Three Twenty-One Capital Partners is committed to supporting management and ownership regardless. Three Twenty-One's Managing Partner, Ervin Terwilliger, is an expert witness in bankruptcy court and will personally attend any required potential court hearings.

Advisory Services include, but are not limited to:

- Scenario Modeling
- Vendor/Creditor/Employee Messaging
- Provide Reports Necessary to Support Messaging and/or Negotiation
- Conduit Between Management, Attorneys and Creditors
- "Sounding Board" for Management
- "Face" of Restructuring Process
- Correspondence for TroverCo to Specified Audiences (creditors/vendors/employees)
- Implement a separate email address for vendor communications
- Support Before and During Bankruptcy (if necessary)
- Utilize Data Gathered from Past Engagement to Support TroverCo' s Efforts
- Strategize to Maximize Potential Preservation of Equity

Three Twenty-One Capital Partners anticipates this engagement will last approximately 90 days. Three Twenty-One Capital Partners will be paid a weekly retainer rate of $6,250, to be paid monthly in advance, plus approved expenses. The weekly retainer will provide TroverCo with full access and support of the entire Three Twenty-One Capital Partners team.

The Firm will continue to perform Investment Banking services for TroverCo while advising the downsizing and potential wind-down of the business. Our Firm will seek financing and/or sale options of the downsized business while pursuing non-normal course of business options to monetize assets. The Investment Banking Services are covered by the existing engagement document and do not require a retainer.

Investment Banking service include, but are not limited to:

- Continue to Model Business for Financing and/or Sale
- Relaunch Marketing Process for Downsized Version of TroverCo
- Seek Options to:
    - o  Reduce Obligations
    - o  Monetize Assets Outside Normal Course of Business

The Firm looks forward to working with TroverCo to effectuate the best possible outcome in this difficult situation.

Sincerely,

Ervin M. Terwilliger
Managing Partner
Three Twenty-One Capital Partners, LLC
erv@321capital.com

Accepted and Agreed

Joseph Trover
CEO
TroverCo, Inc.

**<u>Exhibit D</u>**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

In re:

**TROVERCO, INC.,**

**Debtor.**

**Chapter 11**
**Case No. 17-44474**

### DECLARATION OF ERVIN M. TERWILLIGER IN SUPPORT OF THE DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF THREE TWENTY-ONE CAPITAL PARTNERS AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO THE DEBTOR EFFECTIVE AS OF THE PETITION DATE

Ervin M. Terwilliger, pursuant to 28 U.S.C. § 1476, declares:

1.        I am the Managing Partner of  Three Twenty-One Capital Partners ("321"), which maintains an office at 2205 Warwick Way Suite 310, Marriottsville, Maryland 21104.

2.        I submit this Declaration in support of the application (the "Application")[1] of Troverco, Inc., the above-captioned debtor and debtor-in-possession (the "Debtor"), for entry of an order pursuant to sections 327(a), 328 and 1107 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") authorizing the employment and retention of 321 as financial advisor and investment banker to the Debtor effective as of the Petition Date, and to provide the disclosures required under Bankruptcy Rules 2014(a).

---

[1]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

## SERVICES TO BE PROVIDED

3.       321 possesses the requisite experience in the areas of turnarounds, consulting,

refinancing, sales as going-concerns, joint ventures, mergers, operating due diligence, creditor

advisory, and financial/operational restructuring necessary to serve as the Debtor's financial

advisor and investment banker in this Chapter 11 Case.

4.       The nature and extent of services that 321 may render to the Debtor include, but

are not limited to the following:

      (a)    advising the Debtor in connection with its business plan and financial
projections;

      (b)    attending meetings with the Debtor and other parties in interest and
providing testimony, if necessary, before the Bankruptcy Court;

      (c)    assisting the Debtor in negotiations with creditors, contract counterparties,
lessors and other parties in interest; and

      (d)    advising and assisting the Debtor in connection with any potential sale,
transfer or other disposition of its assets, including taking the necessary
steps to market the Debtor's assets in a manner to maximize the value
thereof and to generate the highest and best offers therefor, providing
assistance with respect to the marketing or disposition of the assets and
perform related services necessary to maximize the proceeds to be realized
for the assets, facilitating the dissemination of information to interested
parties with respect to the Debtor's assets and taking any other acts to
prepare for, conduct and effectuate the sale and to insure the highest
possible price(s) and/or best offer(s) for a sale, transfer or other disposition
of the Debtor's assets;

      (e)    providing general financial and restructuring advisory services in
connection with the Debtor's Chapter 11 Case.

## PROFESSIONAL COMPENSATION

5.       The Debtor retained 321 in May 2016 to provide certain advisory, restructuring

analysis and valuation services pursuant to an agreement between the Debtor and 321 dated May

13, 2016 (the "Initial Advisory Agreement").   A copy of the Initial Advisory Agreement is

-3-

attached to the Application as <u>Exhibit A</u>.  Prior to the Petition Date, the Debtor paid 321 a fee of $40,000 pursuant to the terms of the Initial Advisory Agreement.

6.      On May 13, 2016, the Debtor and 321 entered into a separate agreement (the "<u>Investment Banking Agreement</u>") pursuant to which 321 agreed to provide investment banking services in connection with a potential recapitalization, sale or merger of the Debtor.  A copy of the Investment Banking Agreement is attached to the Application as <u>Exhibit B</u>.  The Investment Banking Agreement provides that 321 will be paid a transaction fee (the "<u>Transaction Fee</u>"), payable in cash at the closing of any Stock Sale, Asset Sale, Lease, Equity Investment, sale of business assets or Merger (collectively, a "<u>Transaction</u>"), based upon the Gross Sale Proceeds (as defined in the Investment Banking Agreement) as follows:

- Eight Percent (8%) of the first $1,000,000 of Gross Sales Proceeds;

- Seven Percent (7%) of Gross Sales Proceeds between $1,000,001 and $2,000,000;

- Six Percent (6%) of Gross Sales Proceeds between $2,000,001 and $3,000,000;

- Five Percent (5%) of Gross Sales Proceeds between $3,000,001 and $4,000,000;

- Four Percent (4%) of Gross Sales Proceeds between $4,000,001 and $5,000,000;

- Three Percent (3%) of Gross Sales Proceeds above $5,000,000.

7.      Prior to the Petition Date, the Debtor reimbursed 321 for $6,500 of expenses incurred, in accordance with the terms of the Investment Banking Agreement.  The Debtor did not pay any fees to 321 on account of the Investment Banking Agreement prior to the Petition Date.

8.      On May 16, 2017, the Debtor and 321 entered into a revised advisory agreement (the "<u>Revised Advisory Agreement</u>" and together with the Investment Banking Agreement, the "<u>Engagement Agreements</u>").  A copy of the Revised Advisory Agreement is attached to the

-4-

Application as <u>Exhibit C</u>.  The Engagement Agreement provides that 321 will be paid a fee of $6,250 per week payable on a monthly basis in advance (the "<u>Retainer Fee</u>"), plus expenses. Prior to the Petition Date, the Debtor paid 321 the following Retainer Fees pursuant to the Revised Advisory Agreement: (i) $12,500 for May 2017, (ii) $25,000 for June 2017 and (iii) $25,000 for July 2017.

9.    No agreement or understanding exists between myself, 321, or any other person for any division or sharing of compensation that is prohibited by statute.

## <u>DISINTERESTEDNESS OF PROFESSIONALS</u>

10.    In connection with its proposed retention by the Debtor in the Chapter 11 Case, 321 took certain steps to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors. Specifically, 321 obtained from the Debtor and/or its representatives the names of individuals and entities that may be parties in interest in the Chapter 11 Case (the "<u>Parties in Interest</u>").  A list of the Potential Parties in Interest is attached hereto as **Schedule 1**.

11.    A review of 321's conflict database reveals that 321 has no current or prior relationship with any of the Potential Parties in Interest listed on Schedule 1.

12.    Insofar as I have been able to ascertain, neither I, 321, nor any partner or employee thereof, have any connection with the Debtor, its creditors, or any other parties in interest, their respective attorneys and accountants, Office of the United States Trustee for the Eastern District of Missouri, any person employed in the Office of the United States Trustee for the Eastern District of Missouri, or any Bankruptcy Judge currently serving on the United States Bankruptcy Court for the Eastern District of Missouri.

-5-

13.     Despite the efforts described above to identify and disclose 321's connections with the Debtor and various parties in interest in this case, as the Debtor has not yet completed its schedules of assets and liabilities and statement of financial affairs (collectively, "Statements and Schedules"), 321 is unable to state with certainty that every client representation or other connection has been disclosed.  Should 321 discover additional information that requires disclosure after the Debtor's preparation of the Statements and Schedules, it will supplement these disclosures as appropriate.

14.     321 has in the past represented, currently represents, and may in the future represent entities that are claimants or interest-holders of the Debtor in matters wholly unrelated to the Debtor's Chapter 11 Case.  If 321 has such clients, it would not represent those clients in any matter related to the Debtor.

15.     321 will continue to supplement these disclosures in the future as appropriate.

16.     321 will not represent any entity other than the Debtor in connection with the Chapter 11 Case.

17.     To the best of my knowledge, after diligent inquiry, 321 is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as 321, its partner and employees (a) are not creditors, equity security holders, or insiders of the Debtor; (b) are not and were not, within 2 years before the date of the filing of the Debtor's chapter 11 petition, a director, officer, or employee of the Debtor; and (c) do not represent or hold an interest adverse to the interests of the Debtor's estate with respect to the matters in which 321 is proposed to be employed.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  July 14, 2017

/s/ Ervin M. Terwilliger
Ervin M. Terwilliger

35001.1 449180v1

<u>**Schedule 1**</u>

**Troverco, Inc.**
**Potential Parties in Interest**

<u>**Debtor**</u>:

Troverco, Inc.

<u>**Non-Debtor Affiliates**</u>:

Troverco Holding Company
Troverco Distribution Company, LLC
LDFS, LLC

<u>**Officers/Directors/Members**</u>:

Joseph E. Trover, Jr.
Joely T. Landreth
David Leavitt

<u>**Restructuring Professionals of the Debtor**</u>:

Cullen and Dykman LLP
Three Twenty-One Capital Partners, LLC
Spencer Fane LLP

<u>**Unsecured Creditors**</u>:

AAIM Employers' Association
ADP LLC
Advanced Lawn Care Fertilizer Co
Advancepierre Foods Inc.
AFS Technologies Inc.
Allied Industrial Equipment
American Solutions for Business
Anderson Lawn and Landscape
Barron & Associates Inc.
Barron Family Clinic
Baymont Inn
Best Western Plus Houma Inn
Blue Tree Systems Inc.
Brandons Trash Service Inc.
BRDD LLC
Business Audio Plus
Central Freight Management LLC

City of Kansas City, MO
Coles County Collector
Comcast
Comfort Inn & Suites (AR090)
Comfort Inn & Suites (KS067)
Comfort Inn (AL239)
Comfort Inn (KS001)
Comfort Inn Mountain Home
Comfort Suites (AR133)
Comfort Suites (AR182)
Comfort Suites (AR223)
Comfort Suites (KY186)
Comfort Suites (MS120)
Comfort Suites (OK122)
Comfort Suites Airport (MS190)
CSI Commercial Services Inc.
Distribution Services
Donco Truck & Automotive
Drury Inn   Northeast
Drury Inn & Suites - Charlotte Northlake
Drury Inn & Suites - Columbus NW
Drury Inn & Suites Austin
Drury Inn & Suites Baton Rouge
Drury Inn & Suites Birmingham SW
Drury Inn & Suites Charlotte University Place
Drury Inn & Suites Indianapolis Ne
Drury Inn St Joseph
Energy Petroleum
Entergy
Enterprise Leasing Co
Enterprise Refrigeration Co
First Morgan LLC
Food Equipment Repair Inc.
Ford Square of Mt Vernon
Grainger
Grub Mart
Guest Inn of Ardmore
Hampton
Healthremede LLC
Hogan Dedicated Services LLC
Hogan Truck Leasing Inc.
Holiday Inn Express
Holiday Inn South County Center
Hormel Financial Services
Howard's Disposal Inc.
HPT-TRS-1

-2-

Iron Mountain
Kuhlman Lawncare Services
La Quinta Inn  Davenport
La Quinta Inn  Garland Harbor
La Quinta Inn & Suites Ft Wayne
La Quinta Inn & Suites Raleigh Durham Intl AP
La Quinta Inn Maingate Fort Jackson
La Salle County Collector
Marco Technologies LLC
Medfirst Medical Center
MHP Hotel LLC
Midwest Occupational Medicine
MIT Systems Inc.
Nemco
Novant Health
Occupational Health Centers of Kansas PA
Office Essentials Inc.
On Time Toner & Supplies LLC
Paetec
Patriot Distribution Corp.
Pic Quick #3
Pit Stop Tire & Car Care
Power Washer Plus LLC
Presto X Company
Quality Inn   KY 264
Quality Inn & Suites (La135)
Quality Inn (In294)
Raben Tire Company
Roadnet Technologies Inc.
Ryder Transportation Services
Ryder Truck Rental Inc.
S & S Service Co.
Safelite Auto Glass
Save Trip
Session Fixture Company
Sky Chefs Inc.
Sleep Inn & Suites (KS144)
Sleep Inn & Suites (LA229)
Smithfield Farmland Sales Corp
SSM Health Medical Group
St Clair Collector
St Louis Sportswear Inc.
St Vincent's Occupational Health Clinic LLC
Star Leasing Company
Subzero Logistics & Cold Storage
Super 8 Bethany

-3-

Super 8 Jonesboro
Super 8 Lebanon
Taylor Farms Tennessee Inc.
Taylor Farms Texas Inc.
Thermo King Corporation
Thermo King of Jackson
Thompson's Gas Inc.
Travelers Cl Remittance Center
Tri State Refrigeration
Truck Centers Inc.
TSW Foods LLC
Uline
Vistar
Wabash Zephyr LLC
Witte Brothers Exchange Inc.

**Utilities**:

Alabama Power
Alcatraz IEC LLC
Ameren IL
Ameren MO
Atmos Energy
Austell Natural Gas
Callaway Electric
Cirro Energy
City of Austin
City Water Light & Power
Comed
Duke Energy
Empire District
Entergy
EPB
First Morgan LLC
Georgia Power
Gulf Power
Hogan Truck Leasing
KC P&L
Laclede Gas Company
L G & E
Liberty Utilities
Mississippi Power
Missouri Gas Energy
Nashville Electric
Nicor
Nipsco

-4-

OG&E Electric Services
Oklahoma Gas & Electric
Oklahoma Natural Gas
Ozarks Electric Cooperative
PSNC Energy
Public Service Company of OK
SCE&G
Southern Pine Electric
Southwestern Electric
Texas Gas Service
Tri County Electric
Vectren
West Central
Westar Energy

**Significant Customers of the Debtor**:

Alimentation Couche-Tard
Army and Air Force Exchange System Network
Bon Appétit
Casey's General Stores
Circle K
CVS Pharmacy
Don Miguel
EZ Go
E-Z Mart
FastLane
Independent Buyers' Co-Op
Krispy Kreme
Landmark Industries
Landshire
Love's Travel Stops
Mapco
MegaMex Foods
Moto
Murphy Oil Corporation
Petro-Mart
Smithfield
Taylor Farms
Timewise and Trucker's America
Travel Centers of America

**Contract/Lease Counterparties**

Ryder Truck Rental Inc.
Hogan Truck Leasing Inc.
TCF Equipment Finance

-5-

Star Truck Rentals

**United States Trustee for the Eastern District of Missouri (and Key Staff Members)**:

Barbara J. Dorsey
Cynthia E. Moore
Karen R. Wilson-Smith
Kathy Lickenbrock
Leonora S. Long
Margaret E. Slaughter
Martha M. Dahm
Paul Randolph
Sandra Herling

**Bankruptcy Judges for the Eastern District of Missouri**

Chief Judge Kathy Surratt-States
Judge Barry S. Schermer
Judge Charles E Rendlen, III

35001.1 449180v1